IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JeJauncey Fernando Harrington, | ) | Case No. 4:18-cv-02743-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Officer Tammy Moses, Cpl. Blanche Quick, Officer Machia Johnson, Patricia Ray, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court upon Defendants' motion for summary judgment. ECF No. 70. Plaintiff filed a response in opposition.[1] ECF No. 78. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), (D.S.C.), this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation ("Report"). On November 14, 2019, the Magistrate Judge issued a Report recommending that Defendants' motion be granted because Plaintiff failed to exhaust his administrative remedies. ECF No. 92. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections. ECF Nos. 96.

---

[1] Defendants filed three motions for extension of time to file a reply, one of which was granted and two of which were denied as moot following the filing of the Magistrate Judge's Report. ECF Nos. 79, 82, 85, 91, 94.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. See *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

**DISCUSSION**

In the present action, Plaintiff alleges that Defendants failed to protect him from a known risk of harm. As stated above, the Magistrate Judge recommends that summary judgment be granted because Plaintiff failed to exhaust his administrative remedies. Plaintiff objects and argues that he that he was not provided with an updated copy of the handbook, which outlines the grievance policies and procedures, until after he filed his civil actions. The Court has reviewed the record, the applicable law, and the Report de novo.

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321

(codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law.[2] *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89–90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

---

[2] Pretrial detainees are also subject to the exhaustion requirements of the PLRA. *See Allen v. Lutz*, No. CV 9:18-2542-HMH-BM, 2019 WL 117314, at *2 (D.S.C. Jan. 7, 2019) ("Allen was required to exhaust any available administrative remedies at GCDC in order to maintain the instant suit." (citing *Rutland v. Dewitt*, C.A. No. 8:09-13-SB, 2010 WL 288217, at *5 (D.S.C. Jan. 25, 2010) (unpublished) ("The exhaustion of administrative remedies is also required of pretrial detainees[.]"); *Tate v. Anderson*, C.A. No. 8:05-3085-HMH-BHH, 2007 WL 28982, at *4 (D.S.C. Jan. 3, 2007) (unpublished) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees[.]"))).

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).

Defendants have provided an affidavit by Director Ray in which she outlines the grievance procedure at Darlington County Detention Center ("DCDC") and a copy of the Inmate Guide. ECF No. 70-2. As summarized by the Magistrate Judge, the DCDC grievance procedure requires that detainees complete the following steps:

> The DCDC provides a kiosk system where inmates can both file grievances and order items from the commissary. A grievance must be submitted through the kiosk within 72 hours of the incident the inmate is grieving. The grievance will be sent to a Shift Sergeant for investigation and response. The Shift Sergeant is provided up to five working days to investigate and provide a response. If the Shift Sergeant deems the grievance valid or invalid, the inmate will be provided the response and reason for the decision. The Shift Sergeant will provide a plan of corrective action for those grievances deemed valid. If the inmate is unsatisfied with response of Shift Sergeant, he must appeal to the Lieutenant within two working days of receiving the response from the Shift Sergeant. The Lieutenant will have five working days to

4

> provide a written response to the grievance. If the inmate is unsatisfied with the response from the Lieutenant, he must appeal to the final level, Detention Center Director, within two working days. The Director is provided seven working days to respond to grievances. The decision of the Director is considered final and no further appeals will be allowed.

ECF No. 92 at 4–5.

Director Ray avers that, at of the date of her affidavit, Plaintiff has submitted 68 kiosk requests since November 9, 2017. ECF No. 70-2 at 3. Twenty-three of those he designated as grievances. *Id.* She states that "[a]ny detainee using the kiosk system, including Harrington, has the ability to direct his/her request to staff and/or grievance to the proper department/person. Harrington is familiar and knowledgeable regarding the kiosk/grievance process at DCDC and has utilized it many times." *Id.* She further avers that every detainee entering DCDC receives a written copy of the Darlington County Detention Center Inmate Handbook which includes a section on grievances.[3] *Id.* at 2, 5.

The Court has thoroughly reviewed all of Plaintiff's grievances. *See* ECF No. 70-2 at 31–53. Plaintiff was attacked by other inmates on April 10, 2018. The first grievance filed by Plaintiff following the attack was filed on May 12, 2018. ECF No. 70-2 at 35. The grievance states,

> First off you first have to have a bond to bond out. Secondly
> I know we have rules as well as your officers but you acting

---

[3] In his affidavit attached to his response in opposition to the motion for summary judgment, Plaintiff avers that "[he] never was instructed on the rules of conduct. [He] had to ask Sgt. Polk for a copy of the handbook. [He] never saw a video presentation as stated in Director Ray's affidavit." ECF No. 78-1 at 3. This argument will be addressed further, infra.

> like its ok for your officers to break rules but we as the inmates must deal with it and when we write a grievance nothing happens to the officer. Furthermore no inmate feels comfortable in a pod when we are being punished as a whole for a few but the guys in B pod are punished individually, while in fact they are causing more problems than A pod but are treated as they are not.

*Id.* This grievance fails to provide notice of Plaintiff's claim for failure to protect. Moreover, as pointed out by the Magistrate Judge, even if this grievance could be liberally construed to assert a claim that Defendants failed to protect him, Plaintiff filed this grievance 32 days after the event—well beyond the 72-hour deadline outlined in the grievance policy.[4]

Plaintiff's grievance filed on May 30, 2018, references the April 10, 2018, attack. In that grievance, he states,

> How can the county that I am being held for tell you were to hold me when I never got in trouble in that county and I have been attacked while in this unit. I am suppose to be in safekeeping how am I being kept safe if I am still being housed with the inmates that attacked me?

ECF No. 70-2 at 34. That grievance was filed more than one month after the event. Accordingly, Plaintiff has failed to properly exhaust his administrative remedies. *Woodford*, 548 U.S. at 88 (holding that exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules,

---

[4] In his objections, Plaintiff states that the copy of the grievance submitted by Defendants is a reply to a response. ECF No. 96 at 2. To the extent Plaintiff argues that this grievance was submitted timely, the Court has determined that this grievance did not put Defendants on notice of Plaintiff's claim. Moreover, the grievance is marked as filed on May 12, 2018 at 12:52 pm. *Id*.

including deadlines"); *Jones v. Bock*, 549 U.S. 199, 219–20 (2007) (holding that a claim that has not been exhausted may not be considered by the district court).

In his objections, Plaintiff asserts that "the current inmate handbooks were not in circulation at the time the Plaintiff filed his 1983 claim, in fact, it wasn't until months later that the handbook was updated on the kiosk, after claim was filed, and all the inmates/detainees had to agree to it before they could access their kiosk account."[5] ECF No. 96 at 2. In his affidavit attached to his response in opposition to the motion for summary judgment, Plaintiff states that he was not instructed on the rules of conduct and was only provided a copy of the handbook upon request. ECF No. 78-1 at 3. Therefore, Plaintiff argues that he should not be held to the 72-hour time requirement to file a grievance.

As an initial matter, the version of the handbook provided by Defendants was adopted on April 15, 2017. ECF No. 70-2 at 13. This version of the handbook provided that an inmate has 72 hours to file a grievance. *Id.* at 25 ("You must complete and submit your grievance <u>within 72 hours</u> of the incident you are grieving."). Accordingly, to the extent Plaintiff argues that his untimely filing should be excused because there was a change in the handbook, this objection is overruled.

---

[5] In his objections, Plaintiff makes several assertions that do not address the Magistrate Judge's analysis of this case. The Court has considered these statements in ruling on the motion for summary judgment but declines to specifically address them. *See*, *e.g.*, ECF No. 96 at 1 ("Thirdly, is their any place in the PLRA that clearly overrides an inmates Miranda Rights because Plaintiff was clearly Mirandized before he was locked up and remembers clearly being told he has the right to remain silent . . . .").

Moreover, even crediting Plaintiff's statement that he was not provided with a copy of the handbook upon arriving at DCDC, he makes no allegation that he was denied one when he requested it or that he did not have a version of the handbook at the time that he was required to timely file a grievance. Accordingly, to the extent Plaintiff argues that the administrative process was unavailable to him, the Court overrules this objection. *See Ross*, 136 S. Ct. at 1859–60 (holding that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").

## **CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment [70] is **GRANTED** and this action is **DISMISSED without prejudice**.[6] Plaintiff's motions to compel [45, 46] are **FOUND as MOOT**.[7]

---

[6] As this recommendation for dismissal is based on failure to exhaust, the dismissal of this case should be without prejudice. *Cf. Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Armstrong v. Scribner*, 350 F. App'x 186, 2009 WL 3497769 at * 1 (9th Cir. Oct. 30, 2009).

[7] In his objections, Plaintiff argues that Defendants have not provided all documentation available to them and, accordingly, the Court should grant his motions to compel. In her affidavit, Director Ray acknowledges that Plaintiff has filed many other requests at the kiosk that he did not designate as grievances. ECF No. 70-2 at 3. The Court has reviewed Plaintiff's motions and finds that any information related to whether Plaintiff has exhausted his administrative remedies has been produced as an attachment

8

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 17, 2020
Spartanburg, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

to the motion for summary judgment. *See id.* at 3 (affidavit of Director Ray stating that Plaintiff filed 23 grievances since November 9, 2017), 31–53 (23 grievances).